**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **THE STATE OF TEXAS, *ex. rel.* LAYNE D. FOOTE, MARK T. LORDEN, ROSEMARIE DE SOUZA, and KENNETH MCDONOUGH, M.D.,** | § § § § § | |
| **Plaintiffs,** | § | NO.: ______________ |
| **v.** | § § § | |
| **ASTRAZENECA, L.P., and ASTRAZENECA PHARMACEUTICALS, L.P.,** | § § § § | |
| **Defendants.** | § § § | |

**NOTICE OF REMOVAL**

Defendants AstraZeneca, L.P. and AstraZeneca Pharmaceuticals, L.P., (collectively "AstraZeneca" or "Defendants"), provide notice pursuant to 28 U.S.C. § 1446 of the removal of the above-captioned case from the 353rd District Court for Travis County, Texas to the United States District Court for the Western District of Texas. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because plaintiffs' First Amended Petition ("Petition") raises substantial and disputed federal issues, *see, e.g.*, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and the matter is thus removable pursuant to 28 U.S.C. §§ 1441 and 1446.

All four relators in this action were, or are, relators in actions in the District of Delaware alleging substantially the same claims against AstraZeneca as those alleged here. *See United States ex rel. Foote v. AstraZeneca L.P., No. 1:10-cv-00095* ("Delaware Foote Action"); *United States ex rel. De Souza v. AstraZeneca PLC*, No. 1:12-cv-00756 ("Delaware DeSouza Action"); *United States ex rel. McDonough v. AstraZeneca LP*, No. 1:10-cv-00557 ("Delaware

McDonough Action").[1] Texas was a party to all three Delaware actions, but declined to intervene, and the TMFPA claims were dismissed, so it could pursue this action instead. *Foote*, D.I. 46, 60; *DeSouza*, D.I.69, 89; *McDonough*, D.I. 32, 35. However, the related Delaware Foote Action is ongoing.

As explained below, while plaintiffs purport to assert only state law claims, the validity of those claims is predicated on the complex federal scheme governing the labeling and marketing of prescription drugs and the coverage and reimbursement for prescription drugs under Medicaid. Indeed, the Petition describes the federal "FDA Regulatory System" in detail (*see* Pet. ¶¶ 31-36), including the core allegations that (a) "[i]f a drug manufacturer creates a new 'intended use' for its drug and the label does not include adequate directions for that use then the drug will necessarily be misbranded in violation of federal law" (*id*. ¶ 36), and (b) the federal Food, Drug and Cosmetics Act ("FDCA") prohibits "misbranding" of prescription drugs. *Id*. ¶¶ 34-36. Similarly, the Petition describes the federal statutory scheme which dictates whether and when a prescription drug is subject to reimbursement by Medicaid. *See id*. ¶ 40. Plaintiffs' purported state law claims rest entirely on the theory that, through various allegedly false and misleading actions, AstraZeneca misbranded Crestor in violation of the FDCA. *See id*. ¶¶ 4, 60, 77, 83, 89, 97. Whether AstraZeneca engaged in misbranding will necessarily be decided under federal law.[2]

---

[1] On November 5, 2014, the Court dismissed all but DeSouza's Louisiana state law and False Claims Act ("FCA") retaliation claims, finding that the action was barred by the FCA's first-to-file rule, because the Delaware Foote Action included the same allegations. *DeSouza*, D.I. 90, at 10-12. AstraZeneca's motion to dismiss the remaining claims, D.I. 94, is pending, though De Souza has since voluntarily dismissed her FCA claims. D.I. 97. On October 29, 2013, McDonough voluntarily dismissed his complaint. *McDonough*, D.I. 35.

[2] While plaintiffs also allege that AstraZeneca misbranded Crestor in violation of state law, they cite no state statute or regulation related to misbranding.

Plaintiffs' claims therefore necessarily depend upon the resolution of disputed and substantial questions of federal law over which federal courts have original jurisdiction. *See Grable*, 545 U.S. at 314. In addition to pleading specific violations of federal law, plaintiffs' Petition directly implicates the FDCA, the federal Medicaid Act, and associated federal regulations. Indeed, plaintiffs' Petition raises substantial and disputed issues of federal law, requiring interpretation and application of the (i) the FDCA, and its implementing federal regulations, which govern the labeling and promotion of prescription medicines; and (ii) federal Medicaid law, which governs when and under what circumstances a state must reimburse for prescription medicines under its Medicaid program. *See* 42 U.S.C. §§ 1396r-8(d)(1)(B), (d)(4).

In accordance with 28 U.S.C. § 1446(a), AstraZeneca respectfully provides the following statement of the grounds for removal of this case:

## PROCEDURAL BACKGROUND

1. The State of Texas, by and through the Attorney General of Texas, Greg Abbott (the "State") and Relators Layne D. Foote, Mark T. Lorden, Rosemarie De Souza, and Kenneth McDonough, M.D., (the "Relators," and, together with the State, the "Plaintiffs") commenced this action by filing an Original Petition under seal in the 353rd Judicial District Court for Travis County, Texas. Plaintiffs served AstraZeneca with their Petition on January 8, 2015. Plaintiffs assert claims under the Texas Medicaid Fraud Prevention Act ("TMFPA"), TEX. HUM. RES. CODE Chapter 36, and Texas common law.

2. In accordance with 28 U.S.C. § 1446(a), copies of the Petition and all process, pleadings, and orders served on or by Defendants are attached hereto as Exhibit "A," and the allegations set forth in the Petition, although not admitted, are incorporated herein as if set out in full.

3. In compliance with 28 U.S.C. § 1446(d), a copy of the Notice of Filing Notice of Removal to the United States District Court for the Western District of Texas, Austin Division that will be filed with the District Court for Travis County, Texas is attached hereto as Exhibit "B."

4. Defendants are serving plaintiffs with written and electronic notice of the removal of this action.

5. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because fewer than thirty days have elapsed since service of the Petition on each of the Defendants.

6. Venue in this district is proper because the court in which the plaintiffs filed this action, the 353rd Judicial District Court of Travis County, Texas, sits within this federal district. *See* 28 U.S.C. §§ 1441(a) and 124(d)(1).

**JURISDICTION**

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because plaintiffs' claims turn on federal questions "arising under" the laws of the United States. Under *Grable*, there is federal question jurisdiction over a case involving only state law claims if any of the state law claims necessarily raises a federal question "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314; *see also West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007) (holding state-law claims in pharmaceutical marketing fraud case were removable under *Grable* because claims presented a substantial and disputed federal). Federal question jurisdiction exists where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

8. The Supreme Court made clear in *Grable* that federal question jurisdiction does *not* require a plaintiff to assert a violation of a federal statute that provides a private right of action; *Grable* requires only that the complaint raise an appropriate federal question. 545 U.S. at 315-19 (limiting the holding of *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804 (1986), to the extent that it implied that a federal cause of action was required to remove a pharmaceutical products liability case); *see also Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1233 (10th Cir. 2006) (explaining that, after *Grable*, it is settled that the absence of a private right of action is not fatal to the exercise of federal question jurisdiction).

9. In affirming the removal of the state law claims in *Grable*, the Court held that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify the resort to the experience, solicitude and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312; *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195-96 (2d Cir. 2005) (upholding removal where state-law claim "involve[d] aspects of a complex federal regulatory scheme").

10. Consistent with *Grable*, the Fifth Circuit has held that "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). All four of these conditions are present here, and thus removal is appropriate.

11. ***First***, the resolution of federal issues is necessary to the resolution of each of plaintiffs' causes of action. The theory underlying every other cause of action is that AstraZeneca "misbranded" Crestor in violation of the FDCA – a federal law. As plaintiffs state

in the Petition "[a] drug is 'misbranded' if the labeling is false or misleading in any particular, the labeling does not contain adequate directions for use, or the manufacturer utilizes false or misleading advertisements relating to the drug." Pet. ¶ 34 (citing to 21 U.S.C. § 352(a), (f), (n)). Because of their reliance on this theory, whether AstraZeneca violated the FDCA must be determined before plaintiffs' TMFPA, common law fraud, negligent misrepresentation, monies had and received and promissory estoppel claims can be resolved.

12. Further, resolution of plaintiffs' claims will require examination not only of the FDCA, but will also require examination of regulations promulgated by the FDA pursuant to authority granted by the FDCA, *see, e.g.*, Pet. ¶¶ 34-36, and federal case law interpreting the regulations, *see, e.g., id.* ¶ 34 n.12.[3] This is patently an issue of federal law involving a complex scheme of regulations, and their resolution requires the interpretation and application of the FDCA, and the associated federal regulations and federal case law interpreting it.

13. Plaintiffs' misbranding claims generally take two forms. First, plaintiffs allege that AstraZeneca illegally promoted Crestor for non-FDA-approved uses. *See, e.g.*, Pet. ¶¶ 52-60, 61-77, 78-83, 84-97. For example, Paragraph 83 of the Petition alleges that "Defendants' planning and promotion of Crestor for use in delaying, stopping, halting, or (before FDA approval in November 2007) slowing the progression demonstrates Defendants' intent to expand the use of Crestor beyond its FDA-approved uses . . . causing the drug to be misbranded in violation of federal and state law." Plaintiffs' misbranding claims also turn on whether Crestor's promotional labeling and advertisements were inconsistent with the FDA-approved label. *See, e.g., id.* ¶¶ 57, 59, 81, 88. Plaintiffs rely on this theory, in part, to support their TMFPA claims.

[3] Plaintiffs even rely heavily on the FDA's interpretations of some of AstraZeneca's promotional materials to support Plaintiffs' allegations that Crestor was misbranded in violation of federal and state law. Pet. ¶¶ 17, 20, 54, 57, 58, 59.

*See, e.g.*, *id*. ¶¶ 100-04. This same conduct is also used to support plaintiffs' common law fraud, negligent misrepresentation, and monies had and received claims. *See, e.g.*, *id*. ¶¶ 115-16, 119-21, 123-127, 130-31.

14. Plaintiffs also allege that for Crestor to be reimbursed by Texas Medicaid, AstraZeneca had to complete a certification that provided that Crestor was "not in violation of either state or federal law." *See, e.g.*, Pet. ¶ 41. According to plaintiffs, because AstraZeneca misbranded Crestor, in violation of the FDCA, these certifications were false – i.e., AstraZeneca was in violation of federal law when it signed the certification. *See, e.g.*, *id*. ¶¶ 100-02. Plaintiffs rely on this theory, in part, to support their TMFPA claims. *See id*. This same conduct is also used to support plaintiffs' common law fraud, negligent misrepresentation, and monies had and received claims. *See, e.g.*, *id*. ¶¶ 115-16, 119-21, 123-127, 130-31.

15. Plaintiffs also seek to recoup the costs incurred in reimbursing Crestor prescriptions written by licensed Texas physicians resulting from AstraZeneca's alleged "off-label" promotion. *See* Pet. ¶¶ 106, 126-27, 135, 139, 140. Plaintiffs' claims depend, as a threshold matter, upon proof that Texas could have, consistent with federal law, refused to pay for the Crestor prescriptions that plaintiffs now claim they did not "intend" to reimburse. An analysis of such claims requires the presiding court to address complex federal statutory and regulatory standards in order to determine whether plaintiffs can establish the prima facie elements of their claims.

16. The Federal Medicaid statute allows a participating state to exclude or otherwise restrict coverage of a prescription drug only in specified circumstances. One such circumstance is that a state may deny reimbursement if the prescribed use is not a "medically accepted indication," a term that is defined by federal law. *See* 42 U.S.C. § 1396r-8(k)(6); *see also* Pet. ¶

40 (recognizing Texas is not authorized by federal law to reimburse for indications that are not "medically accepted"). The "term 'medically accepted indication' means any use for a covered outpatient drug which is approved under the Federal Food, Drug, and Cosmetic Act, [. . .] or the use of which is supported by one or more citations included or approved for inclusion in any of the compendia described in" the Federal Medicaid statute. 42 U.S.C. § 1396r-8(k)(6).

17. Although the Federal Medicaid statute, by its terms, mandates reimbursement for all prescriptions for all medically accepted uses, plaintiffs' Petition posits an exception to the mandate: plaintiffs claim a right to refuse to reimburse for any uses, including FDA-approved uses and off-label but medically-accepted uses, whenever a pharmaceutical manufacturer has engaged in off-label marketing. *See* Pet. ¶¶ 106, 126-27, 135, 139, 140. Indeed, in Paragraph 135, plaintiffs allege that as a remedy for its common law causes of action it seeks "restitution for the value of ***all*** payments that Texas has made for Crestor prescriptions reimbursed under the Texas Medicaid program." (emphasis added). To the extent plaintiffs are relying on their theory of misbranding – off-label promotion by AstraZeneca – plaintiffs are seeking reimbursement for all Crestor prescriptions regardless of whether AstraZeneca's conduct caused the prescription. The Federal Medicaid statute provides for no such exception.

18. Recovery on plaintiffs' claims regarding "misbranding," then, turns on substantial and disputed federal questions: the proper interpretation of the reimbursement provisions of the federal Medicaid statute, including whether Texas is authorized by the federal Medicaid statute to refuse to reimburse for prescriptions for Crestor, regardless of whether they are written for "medically accepted" uses (including uses "supported by one or more citations included or approved for inclusion in any of the compendia"), as defined by federal statute. *See* 42 U.S.C. § 1396r-8(k)(6).

19. Plaintiffs cannot, by alleging only state-law claims, escape the fact that federal standards control. In order to succeed on each of their asserted causes of action, plaintiffs must prove that AstraZeneca's promotion of Crestor was in violation of the FDCA or that Crestor was not eligible for reimbursement under the Federal Medicaid statute. Whether plaintiffs can make this showing depends on interpretation and application of the *federal* FDCA, the *federal* Medicaid Act, and their associated *federal* regulations, plus federal case law. In other words, "resolving a federal issue is necessary to resolution of the state-law claim[s]." *See Singh*, 538 F.3d at 338.

20. ***Second***, the core issues of federal law—whether Crestor was improperly promoted and thus misbranded under the FDCA, its regulations and the federal case law interpreting them, and whether Crestor was eligible for Medicaid reimbursement for the uses for which it was allegedly promoted—are disputed in this case. Among other things, AstraZeneca challenges plaintiffs' interpretation of the requirements and restrictions of the FDCA and the Medicaid Act, and their associated federal regulations. In particular, AstraZeneca disputes that Crestor was misbranded. Additionally, AstraZeneca disputes plaintiffs' premise that plaintiffs may – without violating federal Medicaid law – refuse to pay for Crestor prescriptions where reimbursement was consistent with the dictates of federal law.

21. ***Third***, a product's safety and efficacy, approved uses, allowable promotion, and eligibility for Medicaid reimbursement are areas of substantial interest to the federal government. AstraZeneca does not contend that states have no role or ability to seek recovery for fraud or Medicaid overpayments. However, the federal interest in having a federal forum in which to make consistent legal determinations of claims (be they federal or state) that require resolution of issues such as the appropriate FDA approval and regulation of drugs, the promotion of drugs by

manufacturers, and reimbursement eligibility determinations under federal Medicaid law, far outweigh any state interest in adjudicating such matters in a state forum. In *Grable*, the Supreme Court noted that federal question jurisdiction is appropriate in cases where there is a federal interest in "claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. The Court held that, in that case, "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in federal court." *Id.* at 315. Likewise, the meaning and interpretation of the FDCA, the Medicaid statute, and related federal regulations are important issues that sensibly belong in federal court. *Id.*

22. ***Fourth***, there is a strong interest in having a federal court decide the federal questions raised by the Petition. The federal interest in uniform interpretation of the "intricate federal regulatory scheme including detailed" and substantial "federal funding provisions" is significant. *See In re Zyprexa Prods. Liab. Litig.*, Nos. 04-MD-1596, 07-CV-1933, 2008 WL 398378, at *3-4, 6 (E.D.N.Y. Feb. 12, 2008) ("*Montana v. Eli Lilly*"). A comparison of the relative complexity of the federal and state laws that would be applied in connection with the plaintiffs' claims heavily weighs in favor of a federal forum. In construing similar state law claims, courts have stated that the TMFPA is "analogous" to the FCA and application of FCA interpretation is appropriate. *See United States ex rel. Williams v. McKesson Corp.*, 2014 WL 3353247, at *4 (N.D. Tex. July 9, 2014) (acknowledging the TMFPA's "analogous state law provisions" to the Federal False Claims Act and evaluating both Federal and Texas claims using "the FCA's well-defined legal requirements"). In contrast, a state court handling plaintiffs' claims would be required to interpret and apply a complex federal regulatory scheme. Accordingly, there is a benefit to the "consistency of [a federal] forum." *Grable*, 545 U.S. at 319.

**OTHER REMOVAL/REMAND DECISIONS**

23. Cases involving substantially similar claims have already been removed to federal court. For example, several states brought separate actions in their home states against Eli Lilly raising state law claims based on allegations of off-label marketing of Zyprexa, which similarly turned on the interpretation of the FDCA and associated federal regulations. Eli Lilly successfully removed the cases to federal court and joined them in multi-district litigation in the Eastern District of New York. *See, e.g.*, *Foti ex rel. Louisiana v. Eli Lilly*, 375 F. Supp. 2d 170, 172-72 (E.D.N.Y. 2005) (finding federal question jurisdiction); *W. Va.*, 476 F. Supp. 2d at 231, 234 (same); *Hood ex rel. Mississippi v. Eli Lilly*, No. 07-645, 2007 WL 1601482, at *1 (E.D.N.Y. June 5, 2007) (same).

24. Further, in *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 233-4 (E.D.N.Y. 2007), West Virginia's suit claiming injuries arising from payments for drugs made as part of its participation in the federal Medicaid program—the parameters and requirements of which are governed by federal law—was held to present a substantial and disputed federal question, and remand was denied.

25. The State may argue that *State of Texas ex rel. Ven-A-Care of Florida Keys, Inc. v. Abbott Labs. Inc.*, No. A-05-CA-897-LY, 2005 WL 5430194, at *3 (W.D. Tex. Dec. 5, 2005) ("*Ven-A-Care*") and *Texas v. Merck & Co., Inc.*, 385 F. Supp. 2d 604 (W.D. Tex. 2005)("*Merck*"), support remand. However, those cases are easily distinguishable from the instant case.

26. *Ven-A-Care*, unlike the allegations here, involved drug pricing claims. This Court remanded because it found that plaintiffs' state court claims were not premised on a disputed federal issue because the disputed term raised by the defendants, "Medicare Average Wholesale Price," was not defined by any federal statute or regulation. *Ven-A-Care*, 2005 WL 5430194, at

*3. Here, however, the resolution of plaintiffs' claims turn on disputed federal questions, including whether Crestor was "misbranded" under federal law and the interpretation of reimbursement of "medically necessary" prescriptions. Plaintiffs simply cannot prove their claims without demonstrating that AstraZeneca marketed Crestor in a manner inconsistent with FDA approved indications and labeling—both of which are contested questions of federal law.

27. This case is similarly distinguishable from *Merck*, where the plaintiffs' claims arose solely from the defendant's alleged misrepresentations to the State, and where the plaintiffs did not accuse the defendant of violating a single federal law. 385 F. Supp. 2d at 608. Here, unlike in *Merck*, plaintiffs have expressly asserted that AstraZeneca violated federal law. Indeed, as alleged in the Petition, a violation of the FDCA is a necessary element of each of plaintiffs' claims. Plaintiffs' theory is, in part, that AstraZeneca illegally promoted Crestor for non-FDA approved uses. This promotion, in turn, caused the drugs to be "misbranded," in violation of the FDCA. *See, e.g.*, Pet. ¶¶ 60, 77, 83, 89, 97. Further, as a result of this violation of federal law, the certifications that AstraZeneca was required to provide to Texas Medicaid were rendered false, such that all reimbursement of Crestor by Texas was unlawful. *See, e.g.*, *id.* ¶ 4.

28. Further, in *Merck* the court did not have reason to consider the substantial and disputed federal questions raised on the face of plaintiffs' petition regarding reimbursement for prescription drugs under the Federal Medicaid statute. Here, plaintiffs' request for reimbursement for all Crestor prescriptions, *see* Pet. ¶ 135, necessarily requires interpretation and application of a complex federal regulatory scheme.

29. In sum, the fundamental allegations in the Petition—that AstraZeneca made false statements regarding the safety, efficacy, and FDA-approved indications for Crestor and thus

promoted "misbranded" products which were then reimbursed by Texas Medicaid under false pretenses—require the resolution of whether these products were misbranded under federal law and, even if they were, whether plaintiffs' theory is correct that these products were not eligible for reimbursement under the federal Medicaid statute as a result. These are uniquely federal questions that must be analyzed through the application of a uniquely federal regulatory regime.

## CONCLUSION

30. For the reasons set forth above, this Court has jurisdiction over this matter based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. To the extent that the foregoing bases for federal jurisdiction do not extend to one or more of the State's claims, this Court has supplemental jurisdiction over such claim or claims pursuant to 28 U.S.C. § 1367. This matter may be removed without regard to the citizenship or residence of the parties, in accordance with 28 U.S.C. § 1441(b) and (c).

31. This Notice is timely, as it was filed within thirty days after receipt by each Defendant of the notice from which each first ascertained that the case was one which was removable.

32. The United States District Court for the Western District of Texas is the federal judicial district encompassing the District Court for Travis County, Texas, where this suit was originally filed. Venue, therefore, is proper in this district under 28 U.S.C. § 1441(a).

33. Accordingly, the present lawsuit may be removed from the District Court for Travis County, Texas to the Austin Division of the United States District Court for the Western District of Texas pursuant to 28 U.S.C. §§ 1331 and 1441(a).

34. All of the defendants properly served in this action are a party to this notice.

WHEREFORE, notice is hereby given that this action is removed from the District Court for Travis County, Texas to the United States District Court for the Western District of Texas.

Dated: February 4, 2015

Respectfully submitted,

*<u>/s/ C. Michael Moore</u>*
C. Michael Moore
State Bar No. 14323600
Matthew T. Nickel
State Bar No. 240564042
Meagan E. Dyer
State Bar No. 24078453
Dentons US LLP
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201-1858
(214) 259-0900 -- *Telephone*
(214) 259-0910 -- *Facsimile*

**ATTORNEYS FOR DEFENDANTS ASTRAZENECA, L.P. AND ASTRAZENECA PHARMACEUTICALS, L.P.**

OF COUNSEL:

John C. Dodds
Sarah Richards Humble
Courtney B. Marello
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5000
jdodds@morganlewis.com
shumble@morganlewis.com
cmarello@morganlewis.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 4, 2015, a copy of the NOTICE of REMOVAL was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by electronic mail or by placing same in the United States mail, properly addressed and postage prepaid, this 4th day of February, 2015.

Eugenia La Fontaine Kreig
Jonathan D. Bonilla
Sinty A. Chandy
Michael Garemko
Kris Kennedy
Brian H. Vanderzanden
Hanz Wasserburger
Brian Moore
Justin Dunlap
Assistant Attorneys General
Civil Medicaid Fraud Division
P.O. Box 12548
Austin, Texas 78711-2548

**Counsel for the State of Texas**

Barry Abrams
David Cohen
BLANK ROME LLP
700 Louisiana
Houston, Texas 77002-2727
BAbrams@BlankRome.com
DCohen@BlankRome.com

W. Scott Simmer
SIMMER LAW GROUP PPLC
The Watergate, Suite 10-A
600 New Hampshire Ave. NW
Washington, DC 20037
scott.simmer@simmerlaw.com

Alan M. Freeman
600 New Hampshire Avenue, NW
Washington, DC 20037
freeman@blankrome.com

**Counsel for Plaintiff/Relator Layne D. Foote and Mark T. Lorden**

Corey M. Weideman
DUANE MORRIS LLP
1330 Post Oak Blvd., Suite 800
Houston, TX 77056-3166
cmweideman@duanemorris.com

Teresa N. Cavenagh
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196
tncavenagh@duanemorris.com

**Counsel For Plaintiff/Relator Kenneth McDonough, M.D.**

Sarah Frazier
Berg & Androphy
3704 Travis
Houston, TX 77002-9500

**Counsel For Plaintiff/Relator RoseMarie De Souza**

*/s/ C. Michael Moore*
C. Michael Moore